purportedly race-neutral reason offered by the government for striking an African-American member of the venire applies equally to other members of the venire who are otherwise similarly-situated, but who are not African-American, that is evidence tending to prove purposeful discrimination." *Dinkins*, 691 F.3d at 380-81 (citing *Miller-El II*, 545 U.S. at 241). The government must be judged solely by the justifications it proffered below. "If the [government's] stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." *Miller-El II,* 545 U.S. at 252.

Identifying purposeful discrimination is greatly simplified in Runyon's case because the government gave one—and only one—justification for all of its strikes of African-Americans: the jurors circled answer (d) or answers (c & d) to Question 61. J.A.2632. Every person who circled a defined response gave the identical answer as every other person who circled that response. A side-by-side comparison of black and nonblack veniremembers leaves no doubt that the government's reason for the challenged strikes was a pretext for racial discrimination.

Two nonblack members also circled (d) on Question 61 but the government permitted them to serve. One of them (No. 2) was seated as a juror; the other (No. 54) was held over to participate in the next day's selection of alternates. The government cited no other factor distinguishing the five black members it struck from the two nonblack members it permitted to serve. On the sole criterion the government asserted as justification, these nonblack members were not just "similarly

the African-American veniremembers are of different races, they are both racial minorities who experience discrimination. Viewing racial insults in the video would offend African-American veniremembers, they would sympathize with Runyon as the target of these insults, and the prosecution would benefit from their exclusion. Thus, the video that insulted Runyon's race indicates the strikes were "'motivated in substantial part by discriminatory intent.'" *Foster,* 136 S.Ct. at 1754 (quoting *Snyder,* 552 U.S. at 478).

Third, discriminatory intent is also inferred by the fact that the government did not seek death against the two white codefendants coupled with the fact that Runyon is Asian and the victim was white. The effect of this disparity would have a greater impact on white jurors, to the government's benefit.

Finally, the statistical analysis of the specific facts of Runyon's case proves purposeful discrimination. There is only a 0.026 probability that the government struck seven of the ten African-Americans independent of their race. J.A.2775-2777.

### 4. The District Court's Analysis Was Fundamentally Flawed

The court denied this claim because it found that, aside from the race-baiting video, the strike percentages and strike lists did not prove discrimination. J.A.3028-3029.

### a. Whether Runyon Made a Prima Facie Showing Is Moot.

The court focused on whether Runyon made a prima facie showing. This Court could treat the prima facie issue as moot and "assume, without deciding," that