## IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DAVID ANTHONY RUNYON,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NEWPORT NEWS

---

## SUPPLEMENTAL APPENDIX

---

Michele J. Brace
VA Capital Representation
Resource Center
2421 Ivy Road, Suite 301
Charlottesville, VA 22903
(434) 817-2970
mbrace@mindsort.com

Dana C. Hanson Chavis
Susanne Bales
Assistant Federal Defender
Federal Defender Services
of Eastern Tennessee
800 South Gay Street
Suite 2400
Knoxville, TN 37929
(865) 637-7979
dana_hansen@fd.org
susanne_bales@fd.org

G. Zachary Terwilliger
Lisa R. McKeel
Brian J. Samuels
Office of the U.S. Attorney
Fountain Plaza 3, Suite 300
721 Lakefront Commons
Newport News, VA 23606
(757) 591-4000
zachary.terwilliger3@usdoj.gov
lisa.mckeel@usdoj .gov
brian.samuels@usdoj .gov

*Counsel for Defendant-Appellant*

*Counsel for Plaintiff-Appellee*

---

**LANTAGNE LEGAL PRINTING**
**801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477**

# TABLE OF CONTENTS

Page

Excerpt from Trial Transcript Day 17 Held
Before the Honorable Rebecca Beach Smith
    On August 25, 2009 ...................................................................................S.A. 1

        Testimony of Theodore Schlossman
            Direct Examination (Rebuttal) by Ms. McKeel .................................S.A. 2

Excerpt from Sentencing Hearing Transcript Held
Before the Honorable Rebecca Beach Smith
    On November 17, 2009...............................................................................S.A. 6

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division


UNITED STATES OF AMERICA )
                         )                CRIMINAL ACTION
     v.                  )
                         )                NO. 4:08cr16
DAVID ANTHONY RUNYON,    )
                         )
          Defendant.     )


TRANSCRIPT OF PROCEEDINGS

Norfolk, Virginia

August 25, 2009


**SEVENTEENTH DAY OF TRIAL**

(Penalty Phase)


Before:    THE HONORABLE REBECCA BEACH SMITH
           United States District Judge, and a Jury


Appearances:

           LISA R. MCKEEL
           BRIAN J. SAMUELS
           Assistant United States Attorneys
                Counsel for the United States

           STEPHEN A. HUDGINS
           LAWRENCE H. WOODWARD, JR.
                Counsel for David Anthony Runyon

MR. WOODWARD: I guess I should say that assuming it is at least an hour. If they stand up and talk for 15 seconds, I don't want to be restricted on the short end, but I want the benefit on the long end.

THE COURT: I will give both of you two hours in closing.

We will be in luncheon recess until 20 to two.

(A recess was taken for lunch.)

AFTERNOON SESSION

(The jury returned to the courtroom.)

THE COURT: All the jurors are back from lunch.

Mr. Runyon has finished his case in mitigation, and the United States is now going to offer rebuttal mitigation evidence.

Ms. McKeel, your first witness?

MS. MCKEEL: Theodore Schlossman.

THE COURT: All right.

(Mr. Schlossman was sworn.)

THEODORE SCHLOSSMAN, DIRECT EXAMINATION (Rebuttal), on behalf of the government, as follows:

DIRECT EXAMINATION (Reb.)

BY MS. MCKEEL:

Q    Would you please well us your name, sir.

A    Theodore Schlossman.

Q    Would you spell your last name for us.

**S.A. 2**

A      S-C-H-L-O-S-S-M-A-N.

Q      Mr. Schlossman, you have testified previously in this case; is that correct?

A      Yes, ma'am.

Q      Mr. Schlossman, you were previously incarcerated with Mr. Runyon; is that correct?

A      Yes, ma'am.

Q      Was there an incident that occurred during your incarceration period with Mr. Runyon whereby you got beat up?

A      Yes, ma'am.

Q      Would you please tell us about that.

A      David found out that I was on his witness list, I guess from one of his attorneys.  And I had just got off the phone. I was playing cards, and I found out that I was in transit. My wife checks the computer periodically to find out what is going on with me.  On BOP.gov it gives you updates on what inmates are going through.

         I said that I was in transit, and Dave was like, yeah, that's because you are on my case.  And that's sort of what fueled the fight.  Everybody else had already knew what was going on, except for me.  I guess it was already planned out that --

         MR. WOODWARD:  Your Honor, I'm going to object to what the witness guesses.

GLORIA S. SMITH, OFFICIAL REPORTER

**S.A. 3**

THE COURT:  You can relate the fact that you were on transit, you can say what Mr. Runyon said, and then you can testify as to what occurred.

THE WITNESS:  All right.  Well, after Dave said that, we had a little --

BY MS. MCKEEL:

Q    Dave said what?

A    That I was getting moved because of his attorney or something.

Q    Okay.  What happened?

A    They knocked a little table over.

Q    Who is "they"?

A    Three people that I was playing cards with, Percy Cooper, Roderick Spratley, and Darius Thomas.  They knocked a little table over.  One of them swung at me.  He sort of grazed me, and then the rest of them started swinging.

Q    What did David Runyon say?

A    Oh, don't black his eyes, don't punch him in his face. Hit him in his head and in his body.  I don't want him going to court bruised up.

Q    Do you have any injuries, Mr. Schlossman?

A    Yeah.  They chipped my tooth, and when I got moved to Norfolk, the doctor said that he wasn't sure if my nose was broke or not.

Q    Okay.  Did that scare you from testifying previously?

**S.A. 4**

A    I was a little nervous.

Q    Okay.  Now, did you report that incident?

A    No.

Q    Why not?

A    Well, Portsmouth is so small, the jail is so small, you can't really get to anybody without other people being able to get to you.

Q    If you had reported that incident, what do you think would have happened to you?

A    They would have pounded me.

MR. WOODWARD:  Object to what he thinks would have happened.  It's speculation.

THE COURT:  Sustained.

THE WITNESS:  Oh, I know that they would have pounded me.

THE COURT:  Well, you didn't report it because you were afraid of other inmates?

THE WITNESS:  Right.

THE COURT:  All right.

BY MS. MCKEEL:

Q    In your experience during your incarceration, have you seen other incidents like what you just experienced and relayed to this injury that haven't been reported?

A    Yes, ma'am.

MR. WOODWARD:  Your Honor, I'm going to object to

GLORIA S. SMITH, OFFICIAL REPORTER

**S.A. 5**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA            )
                                    )          CRIMINAL ACTION
        v.                          )
                                    )          NO. 4:08cr16
MICHAEL ANTHONY ERIC DRAVEN         )
                                    )
            Defendant.              )

TRANSCRIPT OF PROCEEDINGS

Norfolk, Virginia

November 17, 2009

**Sentencing**

Before:    THE HONORABLE REBECCA BEACH SMITH
           United States District Judge, and a Jury

Appearances:

           LISA R. MCKEEL
           BRIAN J. SAMUELS
           Assistant United States Attorneys
                Counsel for the United States

           TIMOTHY G. CLANCY
           JAMES S. ELLENSON
                Counsel for Michael Anthony Eric Draven

GLORIA S. SMITH, OFFICIAL REPORTER
********************************

**S.A. 6**

began interviewing individuals, it was Michael Draven who was interviewed by the police a number of times. He lied each time. He told the police that Cory Voss was like a brother to him and that he was very good friends with the family. And just months before the murder, he states on the jail call that he wants to kick a hole in Cory Voss.

He coordinated this cover-up with David Runyon. He told other individuals to go before the grand jury and lie, to say that he and Catherina Voss just had a brother-and-sister relationship. And throughout, throughout the cover-up and the aftermath of the murder, there was no regret whatsoever, Judge. It was just, what can we get away with? This was the role that Michael Draven played. This is what resulted in his conviction.

Now, looking at the defendant's background, he has been on a slope to violent, assaultive conduct since childhood. And I understand the court's point that the background doesn't play a -- or plays somewhat of a peripheral role in sentencing, because the court is focused more on the overwhelming evidence behind the nature and circumstance of the offense.

I mention the background to show that Michael Draven is a very dangerous man. He is a man who is violent and abusive. He is a man that cannot be rehabilitated. The background in the presentence report shows that he was a

**S.A. 7**

danger as early as eight years old, when in using matches, he lit his family's trailer on fire. He was a danger at 28, when he committed this murder. He will be a danger at 68.

And you can see that his tendencies towards violence go far deeper than just this case, and it was predicted very early on. After he burned down this trailer, the doctor that talked to him said that he would be a danger. And if that doctor could see that MySpace page today and see the gothic imagery that was on it, Michael Draven holding guns and representing himself as a very sinister individual, I doubt he would be very much surprised at all.

When the defendant was 13 and 14 years old, he molested a number of young children, and you saw the same pattern over and over again, where he first denied responsibility, tried to blame other individuals, and then finally came forward with some admissions. A doctor that looked at him at this time period said, he is an extremely disturbed young man.

He did have some chances for rehabilitation, Judge, even coming from a very dysfunctional family. He went to The Pines Treatment Center from 1994 to 1998, and in that time period there were a number of episodes where he failed to comply with the treatment programs, wouldn't take the medication that was given to him. In 1997 he made a threat to the victim of one of the foster mothers -- or one of his

GLORIA S. SMITH, OFFICIAL REPORTER

**S.A. 8**

victims, her foster mother.

Finally he was discharged in 1998, showing only modest signs of improvement. The discharge evaluation indicated that he required intensive supervision. Of course that never happened, Judge, and his criminal history since then is hardly surprising. In 2002 he made additional threats, and he was convicted of that, threats to damage a car, threats to hurt a woman. In 2004 he was convicted of felony grand larceny.

There were other instances of criminal conduct that were tied directly to his assaultive behavior. In 1994 he was charged with aggravated sexual battery, based on his molestation of his younger sister. In 2006 he was charged with assault second degree and assault with a dangerous instrument, and there is still an arrest warrant out for him, and it is that arrest warrant that resulted in him being in prison for the brief period between March and April of 2007. And fortunately he was, so the evidence of those jail calls could be obtained.

This violence has escalated over time. These tendencies of assaultive and violent conduct just continued, and the background tells us to expect more violence from Michael Draven. He is a dangerous man. Rehabilitation has failed. He should be put in prison for life.

The guidelines, Judge -- and I know full well that

GLORIA S. SMITH, OFFICIAL REPORTER

**S.A. 9**