No. 17-5
_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

DAVID ANTHONY RUNYON,
Defendant - Appellant,

v.

UNITED STATES OF AMERICA,
Plaintiff - Appellee.
_____

**PETITION FOR PANEL REHEARING AND REHEARING EN BANC**
_____

**RULE 35(b)(1) AND RULE 40(b) STATEMENT**

Panel rehearing and rehearing en banc are warranted because the Panel Majority's reliance upon the "realistic probability" test to deny relief directly conflicts with the recent decision in *Taylor v. United States,* 142 S.Ct. 2015 (2022). Fed.R.App.P. 35(b)(1), 40(b)(ii) (local rule).

Panel rehearing and rehearing en banc are necessary to secure and maintain uniformity of the Court's decisions. Fed.R.App.P. 35(b)(1)(A).

The question presented for panel rehearing and en banc review is:

When deciding whether conspiracy to commit murder for hire resulting in death, 18 U.S.C. §1958(a), is a crime of violence that qualifies as a predicate for a §924(c) conviction, must the Court use the categorical approach, or may it eschew the categorical approach in favor of the realistic probability test?

## INTRODUCTION

In *Taylor,* the Supreme Court explicitly rejected the realistic probability test and reaffirmed that the categorical approach must be used when determining whether a charge qualifies as a crime of violence. *See* 142 S.Ct. at 2024-25. In David Runyon's capital case, the Panel Majority (hereinafter "Panel") relied upon the now rejected realistic probability test to conclude that conspiracy to commit murder for hire resulting in death ("conspiracy to commit murder") is a crime of violence that qualifies as a valid predicate for a §924(c) conviction.[1] Had the Panel limited its analysis to the terms of the statute and solely used the categorical approach, the result would have been that conspiracy to commit murder, §1958(a), is neither a crime of violence nor a valid predicate for a §924 conviction. Application of the *Taylor* rule

---

[1] Chief Judge Gregory disagreed with the majority's treatment of the *Davis* claim. *United States v. Runyon,* 994 F.3d 192, 213 (4th Cir. 2021) (Gregory, C.J., concurring in part, dissenting in part).

to Runyon's case is dispositive and rehearing or en banc review is warranted to remedy the Panel's decision and to clarify the law on this issue in the Fourth Circuit.

Runyon is a federal death row inmate. He was convicted of conspiracy to commit murder for hire resulting in death, 18 U.S.C. §1958(a); carjacking resulting in death, 18 U.S.C. §2119; and murder with a firearm during the commission of a crime of violence. 18 U.S.C. §924(c)(1), (j). (J.A.Vol.4, Doc. 28-4 at1534). The jury imposed death for the conspiracy to commit murder conviction and the murder with a firearm during the commission of a crime of violence conviction. (J.A.Vol.4, Doc. 28-4 at1535).

The Panel affirmed his case on direct appeal. *United States v. Runyon,* 707 F.3d 475 (4th Cir. 2013). On appeal of the denial of his motion for §2255 relief, the Panel rejected a vagueness challenge to the §924(c)(3)(B) conviction by relying on the realistic probability test. *United States v. Runyon,* 994 F.3d 192, 202-04 (4th Cir. 2021). The Panel remanded for an evidentiary hearing on sentencing counsel ineffectiveness. *Id.* at 208-09. Proceedings are ongoing before the district court.

The Supreme Court recently rejected the use of the realistic probability test when determining whether a federal crime qualifies as a predicate crime of violence. *See Taylor,* 142 S.Ct. at 2024-25. Because the reasonable probability test was a key part of the Panel's prior analysis, Runyon seeks rehearing. Further, should this Court find the §924(c) conviction, or its accompanying death sentence, must be vacated,

that determination would inform proceedings below. Runyon respectfully petitions for panel rehearing or en banc review.

I. **The Panel erred when it used the realistic probability test to hold that conspiracy to commit murder is a "crime of violence."**

Runyon is entitled to relief on his §924(c) conviction because intervening Supreme Court precedent confirms that conspiracy to commit murder does not qualify as a crime of violence and explicitly rejects the analytical framework the Panel used to hold otherwise. *Taylor,* 142 S.Ct. at 2024-2025. The Panel analyzed Runyon's claim in two steps. First, it applied the categorical approach and acknowledged the predicate crime of conspiracy to commit murder does not qualify as a crime of violence under §924(c), because there was a "theoretical possibility" that the crime could be committed without the use of violent force. *Runyon,* 994 F.3d at 203. This analysis was—and remains—correct. However, the Panel took a second step and held there was no "realistic probability" the government would indict a conspirator in such a situation and, therefore, the crime was a valid predicate. *Id.*

The "realistic probability" test was explicitly rejected by the Supreme Court in its recent *Taylor* decision. After *Taylor*, the case must rise or fall on the categorical approach. Conspiracy to commit murder can be committed accidentally and without the use of violent force, even if commission in that manner is only a "theoretical possibility." The elements inquiry "precludes[] an inquiry into how any particular defendant may commit the crime. The only relevant question is whether the federal

4

felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor,* 142 S.Ct. at 2020. Because the Panel held otherwise, its decision must be reversed.

### a. Runyon's conviction and death sentence under §924 are based on the invalid predicate crime of conspiracy to commit murder.

The Panel's elements analysis under the categorical approach demonstrates Runyon's §924(c) conviction is invalid because the predicate crime of conspiracy to commit murder does not qualify as a "crime of violence," as defined by §924(c)(3)(B). In his appeal from the denial of his §2255 Motion, Runyon argued that the conspiracy predicate is not a crime of violence because it does not require the government to prove use of physical force. Rather, the elements of the crime simply require proof of an agreement to act. *See* Appellant's Br. 33-34, Doc. 56. Applying the "categorical approach," which requires a court to examine only the elements of the predicate offense based on the statutory definition and does not consider any of the facts supporting the conviction, the Panel correctly noted that conspiracy generally does not qualify as a "crime of violence." *Runyon*, 994 F.3d at 203.

Because it found conspiracy to commit murder under §1958(a) to be divisible into six distinct crimes, the Panel next applied the "modified categorical approach" and looked to the indictment and jury instructions to determine the elements of the

5

crime for which Runyon was charged and convicted. *Id.* at 202-03. Count V charged that Runyon "did knowingly carry and use a firearm during and in relation to a crime of violence [pointing to Counts I, II, and III] . . . and in the course of this violation caused the death of a person through the use of a firearm." (J.A.Vol.1, Indictment, Doc.28-1 at 76). The conspiracy to commit murder predicate in Count I charged that Runyon "did unlawfully, knowingly and intentionally conspire . . . to travel in and cause another to travel in interstate commerce . . . with intent that a murder be committed . . . as consideration for the receipt of … something of pecuniary value, resulting in the death: of Voss." (J.A. Vol. 1, Indictment, Doc. 28-1 at 68). The jury instructions similarly required jurors to find that the government proved Runyon engaged in a conspiracy to commit murder resulting in Voss's death.

The Panel noted that "conspiracy alone does not necessarily implicate the use of force," and that "bodily injury or death can result from negligent or even accidental acts." *Runyon*, 994 F.3d at 203, 200 (internal citations omitted). The Panel explained that such acts "would not constitute crimes of violence, as they do not involve a 'use' of physical force" because "the phrase 'use of physical force' in the force clause requires 'a higher degree of intent than negligent or merely accidental conduct.'" *Id.* at 203 (internal citations omitted). The conclusion of the Panel's categorical approach analysis is that conspiracy to commit murder is not a crime of violence. After *Taylor*, this analysis remains sound, and should control.

6

However, relying on *United States v. Allred*, 942 F.3d 641 (4th Cir. 2019), the Panel then departed from the categorical approach to apply a "realistic probability" analysis, by reasoning that where a defendant:

> *willingly* agrees to enter into a conspiracy *with the specific intent* that a murder be committed for money and death results . . . it follows that the defendant acted with *specific intent* to bring about" death, and that specific intent "ensures that the victim's death was necessarily the result of a *use* of physical force and not merely from negligence or accident.

*Runyon,* 994 F.3d at 204. The Panel found "no 'realistic probability' of the government prosecuting a defendant for entering into a conspiracy with the specific intent that a murder be committed for hire and for a death resulting" without the use of physical force, and it then concluded that conspiracy to commit murder under §1958(a) is a crime of violence. *Id.* at 203-04.

*Taylor* reveals the Panel's reliance on *Allred* and the "realistic probability" analysis was misplaced. The Panel's own analysis under the "categorical approach" demonstrates conspiracy to commit murder is not a crime of violence because the elements of the crime do not require the government to prove use of physical force. The Supreme Court's decision in *Taylor* confirms that the Panel's categorical approach analysis reached the correct conclusion *and also* that it was error to also apply the realistic probability analysis.

### b. The Supreme Court rejected the realistic probability test, which the Panel relied on in upholding Runyon's conviction.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under §924(c)(3)(A), because no element of the offense requires the government to prove that the defendant used, attempted to use, or threatened to use force. The Supreme Court rejected the government's reliance on the realistic probability test:

> To determine whether a federal felony qualifies as a crime of violence, §924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force.

*Taylor*, 142 S.Ct. at 2024. The Court clearly instructed that, rather than apply the realistic probability test, a reviewing court must *only* apply the categorical approach to determine if a federal felony qualifies as a crime of violence under §924(c)(3)(A): "Look at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use, or threatened use of force." *Id.* at 2025.

Just as in *Taylor*, the only question before this Court now is "whether the elements of one federal law align with those prescribed in another." *Id.* Because conspiracy to commit murder requires only an agreement to act, it does not qualify as a crime of violence under §924(c)(3)(A).

### c. Runyon suffered prejudice because the jury would not have convicted him, but for the inclusion of the invalid conspiracy predicate.

The record provides credible evidence the jury relied on the invalid conspiracy predicate when it convicted and sentenced Runyon for the §924 charge. His conviction and sentence must be vacated. This Court has held that if there are two predicate offenses, and one is later invalidated, there must be *some* evidence that jurors relied on the invalid predicate in order to obtain relief. Ambiguity alone is insufficient to warrant relief. *United States v. Said*, 26 F.4th 653, 659 (4th Cir. 2022); *United States v. Ali*, 991 F.3d 561, 575 (2021). Here, the jury was charged it could consider carjacking or conspiracy to commit murder as a predicate. The jury did not return a special verdict reflecting which underlying crime it considered. Thus, Runyon must show that "the jury may have relied solely on one or more of the invalid predicates," to obtain relief. *Said,* 26 F.4th at 659. Runyon meets this burden.

Moreover, because the jury sentenced Runyon to death on the §924 charge, the Court must take even greater care in reviewing the propriety of his death sentence. In criminal cases, the Supreme Court "follow[s] the rule that the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court is uncertain which of the two grounds was relied upon by the jury in reaching the verdict." *Mills v. Maryland*, 486 U.S. 367, 377 (1988) (internal citations omitted). Where a petitioner has been sentenced to death, "the

Court has demanded even greater certainty that the jury's conclusions rested on proper grounds." *Id.*; *see also Lockett v. Ohio*, 438 U.S. 586, 605 ("[T]he risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty . . . is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments"). Unless the Court can rule out the reasonable possibility that the jury rested its verdict on the invalid predicate—and the evidence provided below indicates that it was—it must vacate Runyon's conviction.

The jury imposed life for the carjacking count. It would be a "commonsense-defying conclusion," *Said*, 26 F.4th at 662, that jurors would return a death sentence for conduct (carjacking) it had *already* deemed less serious and punished with life imprisonment. Jurors determined the carjacking charge merited a life sentence. Common sense dictates jurors would not rely upon that conviction as the basis for imposing death on the §924(c) count.

Also, the majority of the government's effort was put into proving the conspiracy between Voss, Draven, and Runyon—of which the carjacking was a small constituent part. The government emphasized to jurors during guilt-phase closing arguments that the carjacking was simply an attempt to obfuscate the conspiracy at the heart of the trial. (J.A. Vol. 2, Tr., Doc. 28-2 at 833). And there was little effort made to connect the gun to that part of the conspiracy. The government first mentioned use of a gun in connection with the carjacking during

10

closing argument rebuttal. (J.A. Vol. 2, Tr., Doc. 28-2 at 858). Indeed, it would have been hard pressed to do more, as the evidence presented at trial linking a gun to the carjacking was minimal: The pictures from the ATM that constitute the bulk of the evidence of the carjacking are very dark, and all that's visible that might possible be a gun is a shadowy shape and reflective light. (J.A. Vol. 4, Gov Trial Ex. 28, Doc. 28-4 at 1394-1427). The bank security officer who reviewed these photographs did not testify about anything resembling a gun. Similarly, the ATM pictures show Voss looking towards the passenger door; he then leaves the ATM, only to return a few minutes later, but this time without the same shadowy figure in the passenger seat, leaving doubt as to the extent of the so-called carjacking. *Id.* Defense counsel emphasized this point in its closing. (J.A. Vol 2, Tr., Doc. 28-2 at 835-857).

This is not a case in which it is easy to imagine jurors relying interchangeably on either predicate to satisfy a §924 charge. The evidence is not ambiguous—it weighs in only one direction, and there is a reasonable possibility that jurors relied solely on the conspiracy to commit murder predicate to find Runyon guilty of the §924 charge.

**II. The jury's erroneous reliance on conspiracy as a crime of violence had a substantial and injurious effect on its determination that a death sentence was warranted.**

In a capital case, the harm of an improper jury instruction can affect more than just the conviction. Even if this Court finds Runyon's conviction on Count V is based solely on the carjacking predicate and thus valid, he is still entitled to relief from his death sentence because, absent the erroneous instruction, there is a reasonable possibility that the jury would not have sentenced him to death. The legal inquiry here is not "whether there was enough to support the result" or a call to "speculate upon probable reconviction and decide according to how the speculation comes out." *Kotteakos v. United States*, 328 U.S. 750, 763, 765 (1946) (citations omitted). Rather, the question is whether the improper jury instructions leave open the possibility that Runyon was sentenced on a legally impermissible theory. The answer is he was.

The strong possibility that the jury would have returned a life sentence if carjacking were the only predicate supporting the §924 charge is demonstrated by the fact that the government focused primarily on the conspiracy charge. It is also revealed by the fact that the jury sentenced Runyon to life on the underlying carjacking count itself despite its relative equal culpability. It is reasonably possible to believe that at least one juror would have rejected a death sentence.

### a. The government's argument for the death penalty focused almost exclusively on the murder for hire conspiracy.

As discussed above, the prosecution's guilt phase case was driven primarily by evidence introduced to support a conviction on conspiracy. This was even more apparent in the punishment phase, where the focus of the prosecution's argument for death was indisputably the conspiracy. The government argued at length about Runyon's role in planning the conspiracy and his motive of pecuniary gain. *See e.g.,* (J.A. Vol 3, Tr., Doc. 28-3 at 1242, 1244, 1246). The government told the jury that "the sole motivator for David Runyon" was "money and money alone." J.A. Vol 3, Tr., Doc. 28-3 at 1258). The Government argued that because Runyon committed the murder "solely for money" he deserved the death penalty. (J.A. Vol 3, Tr., Doc. 28-3 at 1242; *see also id.* at 1244; 1314). There was no emphasis on the carjacking conviction. It is little surprise that the jury returned a life sentence on the carjacking count and a death sentence on the conspiracy count.

The prejudicial effect of the inclusion of the conspiracy predicate in Count V substantially affected the jury's sentencing determination both quantitatively and qualitatively. First, the jury weighed a sentence of life or death on Count V based on its belief that the conviction was supported by two crimes of violence, when in reality it was supported by only one predicate. On a simple, numerical level, inclusion of the invalid conspiracy predicate added improper weight in favor of a death sentence on Count V. Had the jury not been instructed at the guilt phase that conspiracy to

13

commit murder was a crime of violence, it would have accorded the conviction less weight in aggravation at the penalty phase (if it reached a guilty verdict at all).

Second, and more importantly, the improper reliance on conspiracy to commit murder as a crime of violence leant it "heavier" weight in aggravation. It is clear from the jury's death sentence on Count I that it considered conspiracy to commit murder to be the more aggravated of Runyon's stand-alone charges, and it is reasonably probable that the jury sentenced Runyon to death on Count V based on that more aggravated predicate crime of violence.

The jury should never have been told it could rely on the conspiracy count as a predicate for the §924 charge. In light of the Government's singular effort during the punishment phase to convince the jury to return a death sentence for the conspiracy and the fact that the jury returned a life sentence on the carjacking, it is more than reasonably possible that at least one juror would have rejected a death sentence for the §924 charge if it were correctly predicated solely on the Carjacking count.

    **b.    Given the relative moral culpability of the charges, it is unreasonable to assume the jury would have sentenced Runyon to death on the §924 count after returning a life sentence on the carjacking count.**

It is unreasonable to assume the jury would have sentenced Runyon to death on the §924 count after returning a life sentence on the carjacking charge. This is

especially so because the §924 charge is not in any way more morally culpable than the carjacking count since it encompasses the very same conduct.

Nothing in the verdict form indicates the jury believed the §924 count to be more damning than the carjacking count apart from inclusion of the improper conspiracy predicate. It shows that the jury's findings about the gateway factors and the statutory aggravators were identical for the §924 weapons charge and for the carjacking count. Verdict Form at 1-6. The sole difference then was the erroneous consideration of the conspiracy conviction. It is therefore unreasonable to assume the jury would return a death sentence to punish Runyon for causing Voss' death during the carjacking when it had already failed to do so. For these reasons, Runyon is entitled to relief from his death sentence.

## Conclusion

This Court should grant rehearing to resolve the validity of the §924(c) conviction and clarify that the "realistic probability" test should not be applied when assessing the nature of crimes potentially impacted by §924(c). This Court has remanded Runyon's case for an evidentiary hearing on sentencing phase counsel ineffectiveness. *Runyon,* 994 F.3d at 209. The question of whether Runyon's §924(c) conviction should stand, or whether the death sentence on the §924(c) charge should stand, is also relevant to determining whether Runyon deserves the ultimate punishment. The outcome of this proceeding will inform the lower court proceedings

15

on whether Runyon's death sentence is worthy of confidence. It is also a necessary prerequisite to ensuring Runyon's death sentence is reliable.

WHEREFORE, Runyon respectfully requests that rehearing or rehearing en banc be granted.

Respectfully Submitted,

/s/Dana C. Hansen Chavis
Dana C. Hansen Chavis (TN Bar No. 019898)
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org


/s/Susanne Bales
Susanne Bales (TN Bar No. 017868)
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Susanne_Bales@fd.org

Attorneys for Defendant-Appellant