No. 17-5
_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

**DAVID ANTHONY RUNYON,**
Defendant - Appellant,

v.

**UNITED STATES OF AMERICA,**
Plaintiff - Appellee.
_____

**REPLY TO APPELLEE'S RESPONSE TO
MOTION TO RECALL THE MANDATE**
_____

Appellant, David Runyon, files this brief Reply to address several misleading and inaccurate statements in Appellee's Response.

**I. Mr. Runyon's Case Presents the Extraordinary Circumstances Necessary to Recall the Mandate.**

Mr. Runyon's motion identified unforeseen extraordinary circumstances that require this Court to recall its mandate so that it may reassess its reasoning in light of intervening Supreme Court precedent. It is well established that the standard to recall a mandate is met in several specifically enumerated situations, one of which, like here, "is where a subsequent Supreme Court decision has shown that the original

1

judgment was wrong." *United States v. Skandier*, 125 F.3d 178, 183 (3d Cir. 1997) (internal citation omitted). In his motion to recall the mandate, Mr. Runyon cited cases from several circuits reaffirming this holding, stretching back many decades. (Doc 116-1, Motion, p. 5). The government's Response does not mention them once and ignores the relevant standard. Instead, Appellee skips straight to the merits, presenting misleading arguments and asking this Court to deny Mr. Runyon's motion by deciding the merits on an alternative legal ground that did not even exist at the time of the original decision. (Doc. 120, Response, pp. 3-4) (repeating multiple times that Mr. Runyon's "challenge to his § 924(j) conviction must fail."). This Court should decline that invitation.

1. **The Supreme Court's *Taylor* Opinion Abrogated This Court's Previous Opinion.**

Appellee argues that the *Taylor* decision's rejection of the "realistic probability" test had no effect on this Court's opinion in Mr. Runyon's case. (Doc. 120, Response, pp. 4-6). This assertion is false and misleading. The government claims, for example, that the opinion is not "undercut by *Taylor*" because it dealt with a heightened mens rea situation. (Doc. 120, Response, p. 5). As proof for its argument Appellee quotes the Court's conclusion that "[w]hile these mens rea elements are not explicitly tied to the resulting-in-death element, in any realistic case, they must nonetheless carry forward to the resulting-in-death element." *Id*.

(quoting *United States v. Runyon*, 994 F.3d 192, 203 (2021)). The government however, fails to include the very next sentence of the opinion, which reads:

> There is no "realistic probability" of the government prosecuting a defendant for entering into a conspiracy with the specific intent that a murder be committed for hire and for a death resulting from that conspiracy while that death was somehow only accidentally or negligently caused.

*Runyon*, 994 F.3d at 203. This omitted sentence makes clear that this Court's analysis was entirely dependent on the now-rejected "realistic probability" test.[1] It is troubling that Appellee chose not to include a necessary part—and now overruled part—of the analysis of the issue in Mr. Runyon's case.

The government likewise attempts to highlight this Court's previous rejection of Mr. Runyon's hypothetical as support for its argument. (Doc. 120, Response, pp. 5-6). But it fails to mention that this Court stated explicitly that the hypothetical was "theoretically possible" and was only rejected because this Court found "no 'realistic probability' that the government would indict the conspirator for the death-results strain of conspiracy to commit murder for hire in such a situation." *Runyon*, 994 F.3d

---

[1] In fact, subsequent courts have relied upon the *Runyon* decision for that very proposition. *See, e.g.*, *United States v. Byrd,* 2022 WL 1120064, at *27, 20-30 (D. Md. Apr. 13, 2022) (citing *Runyon* for the realistic probability test and noting that it "was hardly invented out of whole cloth in *Runyon*" and that "[t]he Fourth Circuit has likewise employed the test since *Runyon*."). This also highlights the need for this Court to reassess its reasoning in *Runyon* so that this now-defunct test does not continue to proliferate in the lower courts.

3

at 203. Today, under *Taylor*, the analysis ends with the theoretically possible hypothetical. Again, this omission undercuts Appellee's position.

In a final effort, the government quotes this Court's holding that "if a defendant *willingly* agrees to enter into a conspiracy *with the specific intent* that a murder be committed for money and death results from that agreement, it follows that the defendant acted with *specific intent* to bring about the death of the conspiracy's victim." (Doc. 120, Response, p. 6 (quoting *Runyon,* 994 F.3d at 204)). According to Appellee this proves this Court "construed the breadth of the relevant part of § 1958(a) and concluded that it falls within § 924(c)(3)(A)." (Doc. 120, Response, p. 6) This conclusion, however, relies on *United States v. Allred*, 942 F.3d 641 (4th Cir. 2019), a case premised on the "realistic probability" test invalidated by *Taylor*. And the government simply ignores another quote in this part of the Court's decision, which states that it is "difficult to imagine a realistic scenario in which a defendant would knowingly engage in [the broader] conduct ... and thereby only recklessly or negligently cause bodily injury." *Runyon*, 994 F.3d at 204. Read in context—as it must be—it is indisputable that this Court's opinion relied almost exclusively on the now-rejected realistic probability test. This Court should recall the mandate in this case to properly address these issues.

## 2. The Government Prematurely Asks This Court to Decide the Merits Under a Theory That Did Not Exist at the Time of the Decision.

Appellee faults Mr. Runyon for not "challeng[ing] this Court's ruling that the carjacking predicate satisfies § 924(c)(3)(A)." (Doc. 120, Response, p. 3). That issue, however, has no bearing on the legal question currently before this Court: whether there is an extraordinary circumstance requiring the mandate to be recalled. As discussed above, a supervening Supreme Court decision showing the original decision was wrong is undeniably such a circumstance justifying recall of the mandate. Because the *Taylor* decision clearly rejects this panel's analysis of Mr. Runyon's § 924 claim, the mandate should be recalled and Mr. Runyon should be allowed full consideration of his claim in light of the intervening decision after, at a minimum, briefing before this Court.[2]

This process is necessary not only because, as the Court is aware, this is a complex issue of law, but also because the underlying merits are not as easily resolved as Appellee wishes. In his proposed rehearing petition (attached to his recall

---

[2] It is frankly questionable whether in the current procedural posture this Court could even reach the merits as the government asks. Without first recalling the mandate, this Court lacks jurisdiction to reach the merits and thus issuing a decision based on Appellee's argument would constitute an improper "advisory opinion." *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) (the action of deciding an issue without first assuming jurisdiction "is, by very definition, for a court to act ultra vires.").

motion), Mr. Runyon did, in fact, address the merits and explain why he is entitled to relief.

For example, the government chides Mr. Runyon for failing to provide any argument "to upset the authority from *Ali* and *Said*," and concludes that his challenge "must" therefore fail. (Doc. 120, Response, p. 4) Indeed, Mr. Runyon readily agrees that he does not present argument to upset that authority, for the simple reason that he does not need to: those cases do not categorically foreclose the possibility of relief when a valid § 924 predicate remains, as the government insinuates. Rather, those cases hold only that a movant must show a reasonable possibility that "the jury may have relied solely on one or more of the invalid predicates." *United States v. Said*, 26 F.4th 653, 659 (4th Cir. 2022). Mr. Runyon, in his rehearing petition, presented a fact-intensive analysis demonstrating how he meets that standard. (Doc. 118, Exhibit to Recall Mandate Motion (Doc. 116), Rehearing Petition, pp. 10-11).

Moreover, as Mr. Runyon explained in his attached rehearing petition, the prejudice of the undisputedly erroneous jury instruction affected the capital *sentencing*, as well as the conviction, and he is therefore entitled to relief from his death sentence. (Doc. 118, Exhibit to Recall Mandate Motion (Doc. 116), Rehearing Petition, pp. 12-15). Because this argument is unique to capital jurisprudence, it is not resolved by *Said* or *Ali* and was wholly ignored in the government's response. Recalling the mandate is necessary to resolve these issues.

Contrary to its intent, the government's argument provides further support for the need to recall the mandate. As the government acknowledges, *Said* and *Ali* are themselves intervening decisions decided *after* this Court's opinion in this case. Thus, there has never been any briefing, argument, or ruling about their application here.

More broadly, though, the government is essentially asking this Court to ignore the fact that the Supreme Court's *Taylor* decision abrogated the reasoning employed in Mr. Runyon's case. Rather than grapple with the implications of *Taylor* (discussed above), the government seeks to have the Court deny the recall motion by adopting alternative grounds to reject the merits of his case based on a legal doctrine that did not even exist when the original opinion was issued. Such an approach contravenes both law and common sense.

This Court should grant the motion to recall the mandate and order full briefing to address these important issues.

Respectfully Submitted,

/s/Dana C. Hansen Chavis
Dana C. Hansen Chavis (TN Bar No. 019098)
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org


/s/Susanne Bales
Susanne Bales (TN Bar No. 017868)
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Susanne_Bales@fd.org

Attorneys for Defendant-Appellant

# CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

Jeffrey A. Zick
Special Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4000
Fax (757) 591-0866
Jeffrey.Zick@usdoj.gov

/s/Nancy Hernandez
Nancy Hernandez
Paralegal, Capital Habeas Unit
nancy_hernandez@fd.org

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __17-5__     Caption: __Runyon v. United States of America__

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

> **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

> **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

> **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains __1768__ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using __WORD__ [*identify word processing program*] in __Times New Roman, Font Size 14__ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) *Nancy Hernandez*

Party Name __Nancy Hernandez__

Dated: __09/12/2022__